UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

In re:

      DREIER LLP,

                      Debtor.

              Chapter 11
              Case No. 08-15051 (SMB)

SHEILA M. GOWAN, CHAPTER 11
TRUSTEE OF DREIER LLP,

                Plaintiff,

      v.

THE PATRIOT GROUP, LLC,
THE WASHINGTON SPECIAL
OPPORTUNITY FUND, LLC and THE
WASHINGTON SPECIAL OPPORTUNITY
FUND, INC.,

                Defendants.

              Adversary Proceeding
              No. 10-03524 (MG)

-------------------------------------------------------------- x

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS THE AMENDED COMPLAINT

Dated:  February 18, 2011

Harold S. Novikoff
Emil A. Kleinhaus
Alexander B. Lees
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York  10019
Telephone:  (212) 403-1000
Facsimile:  (212) 403-2000

*Attorneys for Defendants The Patriot Group, LLC,
The Washington Special Opportunity Fund, LLC,
and The Washington Special Opportunity Fund, Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ........................................................................................................... 3

POINT I      THE TRUSTEE'S CONSTRUCTIVE FRAUDULENT
             CONVEYANCE CLAIMS SHOULD BE DISMISSED ...................................... 3

             A.     The Trustee is not entitled to recover the repayment of
                    principal to Patriot as a constructive fraudulent conveyance ...................... 3

             B.     The Trustee is not entitled to recover the payment of
                    interest to Patriot as a constructive fraudulent conveyance ........................ 8

POINT II     THE TRUSTEE'S INTENTIONAL FRAUDULENT
             CONVEYANCE CLAIMS SHOULD BE DISMISSED .................................... 12

             A.     The loan repayments to Patriot are not avoidable as
                    intentional fraudulent conveyances ............................................................ 12

             B.     Patriot's "good faith" has not been plausibly challenged ......................... 14

                    1.     The Trustee fails to allege that Patriot knew about or
                           participated in Dreier's fraud .......................................................... 14

                    2.     The Trustee's allegations of "inquiry notice" and lack of
                           due diligence are not plausible ....................................................... 17

             C.     The Trustee's claim for attorneys' fees should be dismissed ................... 18

POINT III    THE TRUSTEE'S FRAUDULENT CONVEYANCE CLAIMS
             SHOULD BE DISMISSED BECAUSE THE TRANSFERS TO
             PATRIOT WERE NOT OF THE DEBTOR'S PROPERTY ............................. 19

POINT IV     THE TRUSTEE'S EQUITABLE SUBORDINATION CLAIM
             SHOULD BE DISMISSED ............................................................................... 21

CONCLUSION ....................................................................................................... 22

# TABLE OF AUTHORITIES

**Page**

## Cases

*Ashcroft* v. *Iqbal*,
129 S. Ct. 1937 (2009) ........................................................................................ 14

*Bos. Trading Grp., Inc.* v. *Burnazos*,
835 F.2d 1504 (1st Cir. 1987) ............................................................................. 4

*Breeden* v. *Thomas (In re Bennett Funding Grp., Inc.)*,
1999 Bankr. LEXIS 1843 (Bankr. N.D.N.Y. Apr. 29, 1999) ................................ 11

*CFTC* v. *Walsh*,
618 F.3d 218 (2d Cir. 2010) ......................................................................... 2, 15

*Christian Bros. High Sch. Endowment* v. *Bayou No Leverage Fund, LLC (In re Bayou Grp., LLC)*,
439 B.R. 284 (S.D.N.Y. 2010) ................................................................ 8-9, 11, 15

*Coder* v. *Arts*,
213 U.S. 223 (1909) ............................................................................................ 13

*Counihan* v. *Allstate Ins. Co.*,
25 F.3d 109 (2d Cir. 1994) ................................................................................. 21

*Daly* v. *Deptula (In re Carrozzella & Richardson)*,
286 B.R. 480 (D. Conn. 2002) ....................................................................... 9, 13

*Davis* v. *Schwartz*,
155 U.S. 631 (1895) ............................................................................................ 16

*DePetris & Bachrach, LLP* v. *Srour*,
71 A.D.3d 460 (1st Dep't 2010) .......................................................................... 9

*Edelman* v. *Lynchburg Coll.*,
535 U.S. 106 (2002) .................................................................................... 16 n.6

*Enron Corp.* v. *Int'l Fin. Corp. (In re Enron Corp.)*,
341 B.R. 451 (Bankr. S.D.N.Y. 2006) ................................................................. 14

*Fraternity Fund Ltd.* v. *Beacon Hill Asset Mgmt. LLC*,
479 F. Supp. 2d 349 (S.D.N.Y. 2007) ...................................................... 6 n.2, 15

*Gardi* v. *Gowan (In re Dreier LLP)*,
2010 WL 3835179 (S.D.N.Y. Sept. 10, 2010) ................................................ 20 n.8

*Gilmer* v. *Woodson*,
　　332 F.2d 541 (4th Cir. 1964) ...................................................................... 16 & n.6

*HBE Leasing Corp.* v. *Frank*,
　　48 F.3d 623 (2d Cir. 1995) .............................................................................. passim

*In re Dreier LLP*,
　　429 B.R. 112 (Bankr. S.D.N.Y. 2010) ...................................................... 3, 19, 20 n.8

*In re Sunbeam Corp.*,
　　284 B.R. 355  (Bank. S.D.N.Y. 2002) ...................................................................... 22

*Irving Trust Co.* v. *Kaminsky*,
　　19 F. Supp. 816 (S.D.N.Y. 1937) ........................................................................... 12

*J. Walter Thompson, U.S.A., Inc.* v. *First BankAmericano*,
　　518 F.3d 128 (2d Cir. 2008) .................................................................................... 15

*Jobin* v. *McKay (In re M&L Bus. Mach. Co.)*,
　　84 F.3d 1330 (10th Cir. 1996) ........................................................................... 15, 16

*Lustig* v. *Weisz & Assocs., Inc. (In re Unified Commercial Capital Inc.)*,
　　2002 WL 32500567 (W.D.N.Y. June 21, 2002)......................................................... 8

*McHale* v. *Boulder Capital LLC (In re 1031 Tax Grp., LLC)*,
　　439 B.R. 47 (Bankr. S.D.N.Y. 2010).......................................................................... 12

*O'Connell* v. *Arthur Andersen LLP (In re AlphaStar Ins. Grp., Ltd.)*,
　　383 B.R. 231 (Bankr. S.D.N.Y. 2008)........................................................................ 21

*Official Comm. of Unsecured Creditors of Champion Enters., Inc.* v. *Credit
Suisse (In re Champion Enters., Inc.)*,
　　2010 WL 3522132 (Bankr. D. Del. Sept. 1, 2010) .................................................... 7

*Pashaian* v. *Eccelston Props.*,
　　88 F.3d 77 (2d Cir. 1996) ......................................................................................... 4

*Pereira* v. *Dow Chem. Co. (In re Trace Int'l Holdings, Inc.)*,
　　301 B.R. 801 (Bankr. S.D.N.Y. 2003), *vacated on other grounds*, 2009
　　WL 1810112 (S.D.N.Y. Jun. 25, 2009) .................................................................... 13

*Pereira* v. *Wells Fargo Bank, N.A. (In re Gonzalez)*,
　　342 B.R. 165 (Bankr. S.D.N.Y. 2006).................................................................... 9 n.4

*Picard* v. *Merkin (In re Bernard L. Madoff Inv. Sec., LLC)*,
　　440 B.R. 243 (Bankr. S.D.N.Y. 2010)........................................................................ 7

*Procter & Gamble Distrib. Co.* v. *Sherman*,
    2 F.2d 165 (S.D.N.Y. 1924) (Hand, J.) ................................................................... 8

*Rubin* v. *Mfrs. Hanover Trust Co.*,
    661 F.2d 979 (2d Cir. 1981) ............................................................................... 9 n.4

*SEC* v. *Rorech*,
    720 F. Supp. 2d 367 (S.D.N.Y. 2010) ................................................................. 9 n.4

*Sharp Int'l Corp.* v. *State St. Bank and Trust Co. (In re Sharp Int'l Corp.)*
    403 F.3d 43 (2d Cir. 2005) ............................................................................... passim

*Sharp Int'l Corp.* v. *State St. Bank and Trust Co. (In re Sharp Int'l Corp.)*,
    302 B.R. 760 (E.D.N.Y. 2003) ................................................................................ 5

*Silverman* v. *Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*,
    337 B.R. 791 (Bankr. S.D.N.Y. 2005) .................................................................. 6, 7

*Sisler* v. *Sec. Pac. Bus. Credit, Inc.*,
    201 A.D.2d 216 (1st Dep't 1994) ..................................................................... 10 n.5

*Whitestone Sav. & Loan Ass'n* v. *Allstate Ins. Co.*,
    28 N.Y.2d 332 (1971) ........................................................................................... 21

## **Statutes and Rules**

N.Y. C.P.L.R. § 5001 ................................................................................................. 11

N.Y. D.C.L. § 276-a ........................................................................................... 18, 19 n.7

Restatement (Second) of Torts § 541 cmt. a ............................................................. 10

Restatement (Third) of Agency § 6.10 .................................................................. 9, 10

## **Other Authorities**

4 Collier on Bankruptcy ¶ 67.37 (14th ed. 1975) ...................................................... 13

Defendants The Patriot Group, LLC ("Patriot"), The Washington Special Opportunity Fund, LLC and The Washington Special Opportunity Fund, Inc. (collectively, "Patriot Group") respectfully submit this reply memorandum in support of their motion to dismiss the Amended Complaint with prejudice, and respectfully state as follows[1]:

## PRELIMINARY STATEMENT

The Trustee's opposition brief "does not dispute" that the repayment of Patriot's loan discharged a valid antecedent debt. Tr. Br. 11. In seeking to recover the repayment despite that concession, the Trustee is trying to jump on the bandwagon of recent cases involving Ponzi schemes, and ride it to a place where the Second Circuit has emphatically declined to go. If the Trustee has her way, individuals and businesses that unwittingly make loans to fraudulent borrowers, and that receive repayment of those loans at maturity, will be subject to fraudulent conveyance claims based on "red flags" that, on the brightest day, are barely visible even with the benefit of hindsight.

The Trustee's position, as stated in the opposition brief, suffers from three critical defects. *First*, the Trustee fundamentally disregards the Second Circuit's decision in *Sharp*, where the Court of Appeals held that, absent insider dealing or the defendant's participation in fraud, "the preferential repayment of pre-existing debts to some creditors does not constitute a fraudulent conveyance." *Sharp Int'l Corp.* v. *State Street Bank & Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 54 (2d Cir. 2005) (quoting *HBE Leasing Corp.* v. *Frank*, 48 F.3d 623, 634 (2d Cir. 1995)). As a matter of law and logic, that holding applies with as much force to alleged Ponzi schemes as to other frauds.

---

[1] Capitalized terms not defined in this reply have the same meanings as in defendants' memorandum of law in support of their motion to dismiss.

*Second*, the Trustee fundamentally misinterprets the concept of "good faith." Consistent with the plain meaning of the words "good faith," as well as their use in the law, the Second Circuit has stated that "the focus of the good faith inquiry" in New York's fraudulent conveyance statute "is on the subjective intent of the transferee." *CFTC* v. *Walsh*, 618 F.3d 218, 230 (2d Cir. 2010). In *Sharp*, moreover, the Second Circuit held that, in the context of the repayment of an antecedent debt, even actual knowledge of fraud will not suffice to show bad faith. *See* 403 F.3d at 54-55. Here, therefore, where the Amended Complaint does not allege that Patriot participated in or knew about Dreier's fraud, the Trustee's claims fail as a matter of law.

*Third*, even accepting the amorphous "good faith" standard that the Trustee adopts, the Amended Complaint does not state a plausible claim for relief. Whatever "inquiry notice" may mean, the Trustee here has already admitted — in a sworn declaration — that the "red flags" presented to Solow note investors do *not* "present a compelling case" of inquiry notice. *See* Kleinhaus Decl. Ex. 1 ¶ 19. The opposition brief says literally nothing about this admission, because it is totally irreconcilable with the Trustee's claim that Patriot was on "inquiry notice" of fraud and failed to conduct due diligence. Nor does the Trustee come to terms with the email that she concedes was sent by Solow's *real CEO* to Jonathan Kane of Patriot, in which the CEO directed Kane to "please call Marc" about the loan transaction. *See* Kleinhaus Decl. Ex. 2; Tr. Br. 6. This, then, is not the *Madoff* case, where some equity investors dictated their own returns. Nor is this *Gredd* v. *Bear Stearns*, where good faith was a triable issue of fact because the defendant was a broker with visibility into the debtor's trades and had been told that the debtor was reporting gains even though its account showed losses. Instead, this case involves nothing more than a loan procured by a lawyer (Dreier) who was so conniving that he tricked his own client (Solow) into confirming to Patriot that he represented the client in

connection with Patriot's loan.  On these facts, the Trustee is dramatically overreaching in trying to recover from Patriot.

For all of these reasons, the Amended Complaint should be dismissed to the extent that it seeks to recover the principal amounts loaned by Patriot.  In addition, given that DLLP benefited from the use of Patriot's money — and also assumed Solow's purported debts by falsely holding itself out as Solow's agent — the contractual interest paid to Patriot also is not recoverable.  Beyond all this, the Trustee's avoidance claims also should be dismissed on the independent ground that the Trustee has failed to challenge a transfer of the *debtor's* property. The language of the forfeiture order entered by the district court, which required forfeiture of all DLLP property traceable to Dreier's fraud, compels the conclusion that DLLP's transfers to Patriot, like DLLP's transfers to GSO, "did not involve a transfer of [D]LLP's property that would be subject to avoidance."  *In re Dreier LLP*, 429 B.R. 112, 127 (Bankr. S.D.N.Y. 2010).

## ARGUMENT

### POINT I

### THE TRUSTEE'S CONSTRUCTIVE FRAUDULENT CONVEYANCE CLAIMS SHOULD BE DISMISSED.

**A.    The Trustee is not entitled to recover the repayment of principal to Patriot as a constructive fraudulent conveyance.**

The Trustee "*does not dispute* that Patriot provided 'reasonably equivalent value' under the Bankruptcy Code or 'fair equivalent' value under the DCL in exchange for the repayment of its principal because the repayment of principal extinguished a common law claim, such as restitution, that Patriot may have had against DLLP."  Tr. Br. 11 (emphasis added).  That concession, combined with the absence from the Amended Complaint of any allegation that Patriot participated in (or knew about) Dreier's fraud, precludes the Trustee from recovering the repayment of principal to Patriot as a constructive fraudulent conveyance.

As demonstrated in the opening brief, "[t]he basic object of fraudulent conveyance law is to see that the debtor uses his limited assets to satisfy *some* of his creditors." *Sharp*, 403 F.3d at 54 (quoting *HBE Leasing*, 48 F.3d at 634).  The Second Circuit, accordingly, held in *Sharp* that "the preferential repayment of pre-existing debts to some creditors *does not constitute a fraudulent conveyance*."  403 F.3d at 54 (emphasis added) (quoting *HBE Leasing*, 48 F.3d at 634); *accord, e.g.*, *Bos. Trading Grp., Inc.* v. *Burnazos*, 835 F.2d 1504, 1508-09 (1st Cir. 1987).

Although the Trustee acknowledges that DLLP's repayment of a valid debt to Patriot is not avoidable under "the Bankruptcy Code's constructively fraudulent transfer statute," Tr. Br. 11, she nevertheless asserts that the repayment *may* be avoided under New York law on the theory that Patriot acted in bad faith, *id*. at 9, 11.  The Trustee is wrong.

In *Sharp*, the Second Circuit held unequivocally that under the DCL, "bad faith" is *not* "an articulable exception to the broad principle that 'the satisfaction of a preexisting debt qualifies as fair consideration for a transfer of property.'"  403 F.3d at 54 (quoting *Pashaian* v. *Eccelston Props.*, 88 F.3d 77, 85 (2d Cir. 1996)).  Rather, the *only* exceptions "to the rule that the repayment of an antecedent debt constitutes fair consideration" are situations in which:  (a) "the transferee is an officer, director, or major shareholder of the transferor"; or (b) the transferee "participate[d] in" the debtor's fraud.  403 F.3d at 54-55 (internal quotation marks omitted). Outside of those narrow circumstances, "a mere preference between creditors *does not constitute bad faith*."  *Id.* at 54 (emphasis added).  Here, therefore, where the Trustee concedes that the payments at issue satisfied a valid debt — and makes no allegation that Patriot was an insider or participant in DLLP's fraud — the Trustee has no viable constructive fraud claim under New York law.  *See id*. at 55-56.

-4-

Contrary to the Trustee's assertion, *see* Tr. Br. 10, the Second Circuit's decision in *HBE Leasing*, 48 F.3d 623, does not permit her to avoid the repayment to Patriot based on allegations of "constructive knowledge."  In *HBE Leasing*, judgment creditors sought to set aside mortgages given by the debtor to an insider, *i.e.*, the mother of the debtor's principal.  Although the mortgages were given in exchange for cash, the debtor immediately disbursed the cash to its principal, leaving the debtor with "nothing."  *Id*. at 635.  Thus, as recognized in *Sharp*, *HBE Leasing* "concerned the 'collapsing' of contemporaneous transactions coordinated to shield an insolvent debtor's assets from bona fide creditors."  *Sharp*, 403 F.3d at 55.  Faced with that issue, the Second Circuit in *HBE Leasing* held that the transactions could be "collapsed" if the transferee had "constructive knowledge" of the fraudulent scheme.  48 F.3d at 635-36.  *HBE Leasing*, accordingly, did *not* involve the satisfaction of an "antecedent debt"; rather, it involved a contemporaneous exchange between a debtor and transferee for which the debtor received *no* value — the antithesis of the repayment of a debt.

Although the Trustee is correct that *HBE Leasing* also contains language to the effect that the "good faith" requirement under New York law "is satisfied if the transferee acted without either actual or constructive knowledge of any fraudulent scheme," *id*. at 636, what the Trustee does not mention is that the plaintiff in *Sharp* relied without success on exactly the same language.  As explained by the district court in *Sharp*, the Second Circuit in *HBE Leasing* made this comment in the context of *rejecting* "an alternative ground advanced by the parties seeking to avoid the transaction — namely, that a lack of good faith on the part of the transferee . . . was grounds for avoiding the [transaction]."  *Sharp Int'l Corp*. v. *State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*, 302 B.R. 760, 782 (E.D.N.Y. 2003), *aff'd*, 403 F.3d 43 (2d Cir. 2005).  The district court went on to conclude that "the relevance of the Second Circuit's assertion that actual or constructive notice of any fraudulent scheme is enough to establish the transferee's lack of

good faith is *limited to cases involving a fraudulent scheme that has the effect of depriving the debtor of the benefit of the consideration given in exchange for the transfer that is sought to be avoided.*"  *Id*. (emphasis added; internal quotation marks omitted).

    *Sharp* thus explicitly limited any finding that "constructive knowledge" can be sufficient to show bad faith to situations that do *not* involve the repayment of an antecedent debt, *e.g.*, situations where "the debtor 'might improperly funnel' [property] 'to third parties.'"  *Sharp*, 403 F.3d at 55 (quoting *HBE Leasing*, 48 F.3d at 637).  This limitation is entirely consistent with *HBE Leasing* itself, which broadly recognized that "the preferential repayment of pre-existing debts to some creditors *does not constitute a fraudulent conveyance*."  *HBE Leasing*, 48 F.3d at 634 (emphasis added).[2]

    The Trustee's argument that *Sharp* is inapplicable in situations where "constructive knowledge" of fraud is present "at the time of the . . . original investment" is likewise unpersuasive.  Tr. Br. 10-11.  The cases cited for that proposition do *not* involve repayments of valid antecedent debts.  In *HBE Leasing*, as discussed above, the debtor received *no* value as a result of the challenged transaction, and it did not discharge a valid debt.  *See* 48 F.3d at 636-37.  Moreover, in *Silverman* v. *Actrade Capital, Inc. (In re Actrade Financial Technologies Ltd.)*, 337 B.R. 791 (Bankr. S.D.N.Y. 2005), it was *not* conceded — as in this case

---

[2]  Although further distinctions of *HBE Leasing* are unnecessary, it also bears noting that, in applying the "constructive knowledge" standard to determine whether the transactions could be collapsed, the Second Circuit held that the defendant's "failure to inquire represented a *conscious turning away from the subject*" at issue.  48 F.3d at 637 (emphasis added).  Under New York law, "conscious avoidance" is present when someone "suspected a fact and realized its probability, but refrained from confirming it in order later to be able to deny knowledge."  *Fraternity Fund Ltd.* v. *Beacon Hill Asset Mgmt. LLC*, 479 F. Supp. 2d 349, 368 (S.D.N.Y. 2007).  Thus, it "involves a culpable state of mind," where it "can almost be said that the defendant actually knew" the fact at issue.  *Id.* (internal quotation marks omitted).  The Amended Complaint does not allege facts that would remotely support a finding of "conscious avoidance."

— "that there was a valid antecedent debt," *id*. at 805-06; to the contrary, the trustee alleged "that there was no satisfaction of an antecedent debt," and the question of whether the debtor received value turned on whether the debtor received "indirect value" from consideration paid to third parties, *id*. at 804. Similarly, in *Picard* v. *Merkin (In re Bernard L. Madoff Investment Securities, LLC)*, 440 B.R. 243 (Bankr. S.D.N.Y. 2010), it also was *not* conceded that the debtor repaid a valid antecedent debt; rather, the trustee alleged that the defendant was not "entitled to claims for restitution," *id*. at 257-58, 262-65. These cases stand in direct contrast to *Sharp* and to this case, in which the Trustee has explicitly agreed that DLLP repaid a valid antecedent debt. *See Official Comm. of Unsecured Creditors of Champion Enters., Inc.* v. *Credit Suisse (In re Champion Enters., Inc.)*, 2010 WL 3522132, at *19 (Bankr. D. Del. Sept. 1, 2010) (adhering to *Sharp* in a case involving repayment of an antecedent debt).

The fundamental principle codified in *Sharp* — namely, that fraudulent conveyance law does not concern itself with preferences, other than in narrow circumstances not present here — leaves no room for the arbitrary distinction drawn by the Trustee between loans to Ponzi schemes and other loans repaid with the proceeds of a fraud. In both situations, "the debtor uses his limited assets to satisfy *some* of his creditors," precluding a fraudulent conveyance claim. *Sharp*, 403 F.3d at 54 (internal quotation marks omitted). Accordingly, the Trustee's claims to recover the repayment of principal to Patriot as a constructive fraudulent conveyance should be dismissed.[3]

---

[3] The Trustee's assertion that "Patriot *does not contest* that it was on inquiry notice of the illegitimate nature of the fake Solow notes," Tr. Br. 16, is totally baseless. Patriot has argued at length that Patriot was not on "inquiry notice" of Dreier's fraud. *See* Opening Br. 7-9, 28-29. If "inquiry notice" is relevant to a constructive fraudulent conveyance claim, Patriot respectfully refers the Court to the discussion below. *See infra* pp. 17-18.

**B.      The Trustee is not entitled to recover the payment of interest to
Patriot as a constructive fraudulent conveyance.**

The Trustee's argument that the contractual interest payments on Patriot's loan
are subject to avoidance, even if the repayment of principal is not, fails for several reasons.
*First*, DLLP indisputably obtained a benefit from the use of Patriot's money, for which Patriot
was entitled to compensation.  *Second*, under the doctrine of implied warranty of authority,
DLLP was itself obligated to make the contractual interest payments that it purported to bind
Solow to make; DLLP thus satisfied an antecedent debt when it did so.  *Third*, DLLP owed
prejudgment interest to Patriot in respect of Patriot's undisputed fraudulent-inducement claim,
and thus satisfied an antecedent debt for that reason as well.

Between August 2007, when Patriot wired the loan proceeds to DLLP, and
August 2008, DLLP received a significant benefit:  namely, the opportunity to put Patriot's
money to use.  "The simple fact is that the use of funds for a period of time has value."  *Lustig* v.
*Weisz & Assocs., Inc. (In re Unified Commercial Capital Inc.)*, 2002 WL 32500567, at *6
(W.D.N.Y. June 21, 2002); *accord, e.g.*, *Procter & Gamble Distrib. Co.* v. *Sherman*, 2 F.2d 165,
166 (S.D.N.Y. 1924) (Hand, J.).

The cases cited by the Trustee for the proposition that "value" is not given in
exchange for "fictitious profits" are inapposite.  Those cases involved redemption payments to
*equity* investors in a Ponzi scheme — *not* contractually owed interest payments.  "If a person
invests money with the understanding that he will share in the profits produced by his
investment, and it turns out that there are no profits, it is difficult to see how that person can
make a claim to receive any more than the return of his principal investment."  *Lustig*, 2002 WL
32500567, at *8.  In contrast, when an investor makes a *loan* to a business, even a fraudulent
one, the resulting payments are "not simply payments of nonexistent profits, but of a
contractually provided-for, commercially reasonable rate of interest."  *Id.*; *see also Christian*

-8-

*Bros. High Sch. Endowment* v. *Bayou No Leverage Fund, LLC (In re Bayou Grp., LLC)*, 439

B.R. 284, 338 (S.D.N.Y. 2010) (distinguishing interest paid on loans from profits on equity

investments that are not made "on the basis of an explicit promise of a repayment greater than

principal").[4]

        Moreover, contrary to the Trustee's assertion, DLLP had a clear obligation to pay

interest to Patriot under the doctrine of implied warranty of authority.  As demonstrated in the

opening brief, under that doctrine, a person pretending to be an agent for another is liable for the

debts that he incurs on behalf of the supposed principal.  *E.g.*, *DePetris & Bachrach, LLP* v.

*Srour*, 71 A.D.3d 460, 462 (1st Dep't 2010); Restatement (Third) of Agency § 6.10.

Accordingly, by misrepresenting DLLP's authority to act on Solow's behalf, Dreier made DLLP

liable for the "loss of the benefit" that Patriot expected to receive from Solow's performance.

*DePetris & Bachrach, LLP*, 71 A.D.3d at 462.  DLLP's payments of both principal and

contractual interest thus extinguished an antecedent debt.  *See Daly* v. *Deptula (In re Carrozzella*

*& Richardson)*, 286 B.R. 480, 491 (D. Conn. 2002) (interest payments by Ponzi scheme operator

to lender were not avoidable as fraudulent conveyances because they satisfied an antecedent

debt).

---

[4]  The Trustee's assertion in a footnote that the 11% interest rate paid to Patriot was not
"reasonable" in light of the 5.65% LIBOR rate prevailing at the time ignores the fact that LIBOR
is a reference rate for interbank borrowing.  *See SEC* v. *Rorech*, 720 F. Supp. 2d 367, 375
(S.D.N.Y. 2010) (finding that "the risk-free rate of return . . . is typically estimated by reference
to [LIBOR]").  It also ignores well-established law holding that, under the reasonably-
equivalent-value test, neither "mathematical precision" nor a "penny-for-penny exchange" is
required.  *Rubin* v. *Mfrs. Hanover Trust Co.*, 661 F.2d 979, 993 (2d Cir. 1981).  Rather, the value
received by the debtor "can be 'roughly' the value of the transfer made." *Pereira* v. *Wells Fargo*
*Bank, N.A. (In re Gonzalez)*, 342 B.R. 165, 173 (Bankr. S.D.N.Y. 2006).  Thus, to conclude that
Patriot gave reasonably equivalent value, the Court does not need to find that the interest
payments to Patriot exactly equaled the value of Patriot's loan.

The Trustee's attempts to evade the implied-warranty-of-authority doctrine are to no avail.  First, the Trustee's assertion that the doctrine does not apply because Dreier "forged the signature of a Solow executive," Tr. Br. 12, makes no sense.  The doctrine of implied warranty applies when someone purports to bind a principal without authority:  whether the fraudster signs his own name or forges the signature of his purported principal has no possible legal significance.  Nor can DLLP escape liability based on nebulous allegations of "inquiry notice."  *See* Tr. Br. 12-13.   An implied-warranty claim does not lie if the defrauded party "knows that the person who purports to make the contract, representation, or conveyance acts without actual authority."  Restatement (Third) of Agency § 6.10.  Such knowledge may be deemed to exist if the defrauded party "'*blindly relies* upon a misrepresentation the falsity of which would be *patent to him* if he had utilized his opportunity to make a cursory examination or investigation.'"  *Id.* § 6.10 cmt. c, reporter's note (emphasis added) (quoting Restatement (Second) of Torts § 541 cmt. a).   Here, the Amended Complaint shows that Jonathan Kane of Patriot did *not* "blindly rely" on DLLP:   Kane contacted Steven Cherniak of Solow and, as the Trustee now admits, the *real* Cherniak responded by directing Kane to "please call Marc."  Am. Compl. ¶¶ 33-38.  The Trustee, therefore, has no basis to claim that Patriot's lack of authority was so "patent" to Patriot as to deprive Patriot of a claim against DLLP.[5]

---

[5] The facts of the single decision cited by the Trustee stand in stark contrast to this case.  In *Sisler* v. *Security Pacific Business Credit, Inc*., 201 A.D.2d 216 (1st Dep't 1994), a trustee incorrectly represented that he was authorized to take actions on behalf of two trusts.  The plaintiff, however, had received copies of the trusts' governing documents, which showed that the trustee could not take those actions.  *See id.* at 222.  The court concluded that, in those circumstances, the plaintiff was not entitled to rely on the trustee's representation as to his authority.  *Id.* at 222-23.

Finally, in addition to extinguishing contractual liabilities, DLLP also paid down a separate liability when it made interest payments to Patriot:  namely, Patriot's entitlement to prejudgment interest on its fraud claim.  *See* Opening Br. 21.  In arguing to the contrary, *see* Tr. Br. 16 n.4, the Trustee does not even try to distinguish *Breeden* v. *Thomas* (*In re Bennett Funding Group, Inc.)*, 1999 Bankr. LEXIS 1843 (Bankr. N.D.N.Y. Apr. 29, 1999).  In *Breeden*, the debtors operated a Ponzi scheme and fraudulently induced the defendant to lend them money. In a suit to recover the principal plus interest paid to the defendant, the court held that the interest payments satisfied an antecedent debt under CPLR § 5001, which compels payment of 9% interest on a fraudulent-inducement claim.  *Id.* at \*25-32.

The *Bayou* case, which the Trustee cites as having rejected this argument, is unpersuasive.  The *Bayou* court declined to account for prejudgment interest on the basis that such interest is only awarded as a "make-whole remedy ordered by the Court once a final judgment for a sum certain is entered."  439 B.R. at 337.  *Breeden*, however, rejected this reasoning, holding that, as a result of the CPLR's *requirement* that prejudgment interest be awarded, "it is clear that a payment of only [principal] would not have made Defendant whole *and would not have extinguished the Debtors' potential liability*" under New York law.  1999 Bankr. LEXIS 1843, at \*32 (emphasis added).  The interest payments, accordingly, "served to reduce the antecedent liability of the Debtors and thus constituted 'value.'"  *Id.*

For all of these reasons, Patriot provided value in exchange for not only the repayment of its principal, but also the payments of contractual interest by DLLP.

# POINT II

## THE TRUSTEE'S INTENTIONAL FRAUDULENT CONVEYANCE CLAIMS SHOULD BE DISMISSED.

**A.    The loan repayments to Patriot are not avoidable as intentional fraudulent conveyances.**

As demonstrated in Patriot's opening brief, the Second Circuit held in *Sharp* that "a conveyance which satisfies an antecedent debt made while the debtor is insolvent is neither fraudulent nor otherwise improper, even if its effect is to prefer one creditor over another."  403 F.3d at 54-55 (internal quotation marks omitted).  This reasoning applies with equal force to claims of intentional fraud:  indeed, *Sharp* itself squarely rejected an intentional fraudulent conveyance claim on the basis that the challenged transfer "was at most a preference between creditors" and, accordingly, "did not 'hinder, delay, or defraud either present or future creditors.'"  403 F.3d at 56 (quoting DCL § 276); *see also, e.g.*, *Irving Trust Co.* v. *Kaminsky*, 19 F. Supp. 816, 818 (S.D.N.Y. 1937) ("[A] transfer by an insolvent debtor to pay or to secure an antecedent debt *has never been treated as a transfer to hinder, delay or defraud creditors*, although it is self-evident that other creditors are necessarily hindered and delayed by such a transfer." (emphasis added)).

In response, the Trustee cites various cases, including this Court's decision in *McHale* v. *Boulder Capital LLC (In re 1031 Tax Group, LLC)*, 439 B.R. 47 (Bankr. S.D.N.Y. 2010), for the proposition that transfers that are part of a Ponzi scheme are "presumed" to be made with the intent to defraud.  Tr. Br. 19-20.  *McHale*, however, did *not* deal with the repayment of an antecedent debt owed by the debtor:  the loans at issue in that case were made to *non*-debtor entities owned by the debtors' principal, and the Court held that the repayment of those loans provided *no* value to the debtors. 439 B.R. at 53, 73-74   *McHale*, therefore, is distinguishable from *Sharp* and from this case; and nothing in *McHale* precludes this Court from

holding that the repayment of a valid antecedent debt is not avoidable as a fraudulent conveyance, whatever presumption may apply.

To the extent that the cases cited by the Trustee conclude that the rule set forth in *Sharp* does not apply to Ponzi schemes, they are not persuasive. As discussed above, *Sharp* holds that the repayment of a valid debt "*does not constitute a fraudulent conveyance*." 403 F.3d at 54 (emphasis added; internal quotation marks omitted). That rule is so well-established that Judge Bernstein has observed that it "is more ungrudgingly accepted" than any other point of bankruptcy law. *Pereira* v. *Dow Chem. Co.* (*In re Trace Int'l Holdings, Inc.*), 301 B.R. 801, 805 (Bankr. S.D.N.Y. 2003), *vacated on other grounds*, 2009 WL 1810112 (S.D.N.Y. Jun. 25, 2009); *see also, e.g.*, *Coder* v. *Arts*, 213 U.S. 223, 241 (1909) ("An attempt to prefer is not to be confounded with an attempt to defraud, nor a preferential transfer with a fraudulent one." (internal quotation marks omitted)); 4 *Collier on Bankruptcy* ¶ 67.37, at 535 (14th ed. 1975) ("The intent to delay or hinder seemingly implicit in any *preferential* transfer by an insolvent debtor has, however, been held not to constitute the actual fraudulent intent required under" the Bankruptcy Act of 1898's fraudulent conveyance provision. (emphasis in original)).

Nor is there any basis for the Trustee's distinction between a debt that is "antecedent to the debtor's fraud" and a debt that results from the fraud. Tr. Br. 20. As discussed above, in repaying either type of debt, the debtor "uses his limited assets to satisfy *some* of his creditors," thus precluding a fraudulent conveyance claim. *Sharp*, 403 F.3d at 54 (emphasis in original) (quoting *HBE Leasing*, 48 F.3d at 634). Moreover, in both situations, the fraudulent debtor benefits from the ability to use the lender's funds, whether for legitimate or fraudulent purposes. *See Daly*, 286 B.R. at 491 ("Regardless of the Debtor's business, legitimate or otherwise, so long as the Debtor received 'reasonably equivalent value' in exchange for its transfer of property, there has been no diminution in the Debtor's estate and the remaining

creditors have not been damaged by the transfer."). There is simply no reason why lenders such as Patriot, who are defrauded into making loans by an alleged Ponzi scheme operator, should be worse off under the law than lenders such as State Street in the *Sharp* case, whose loans are repaid with the proceeds of fraud on others.

**B.    Patriot's "good faith" has not been plausibly challenged.**

Even if the Court concludes that the Trustee has stated a *prima facie* case, the Trustee has failed to allege facts to overcome Patriot's "value" and "good faith" defense under section 548(c) of the Bankruptcy Code and section 278 of the DCL. For the reasons set forth in Point I, *supra*, Patriot gave value in exchange for the repayment of its loan with interest. In addition, as discussed below, Patriot's good faith has not been plausibly challenged.

As a threshold matter, the Trustee's argument that the "good faith" defense cannot be considered on this motion, Tr. Br. 22-23, is at odds with the Supreme Court's decision in *Ashcroft* v. *Iqbal*, which held, in the context of a qualified immunity defense, that a complaint must show a plausible entitlement to relief in the face of a defense put at issue in the complaint. 129 S. Ct. 1937, 1947 (2009) (setting forth what plaintiff "must plead to state a claim" against defendants "entitled to assert the defense"). *Iqbal* is consistent with longstanding law that an affirmative defense may be sustained on a motion to dismiss where — as in this case — the defense is apparent from "the allegations of the Complaint and other material which the Court may consider" on a Rule 12(b)(6) motion. *Enron Corp.* v. *Int'l Fin. Corp.* *(In re Enron Corp.)*, 341 B.R. 451, 455 & n.3 (Bankr. S.D.N.Y. 2006).

**1.    The Trustee fails to allege that Patriot knew about or participated in Dreier's fraud.**

As demonstrated in Patriot's opening brief, the "good faith" test invoked by the Trustee is patently at odds with the plain, subjective meaning of the words "good faith" and their

use in other areas of the law.  *See* Opening Br. 26-27 (*citing, e.g.*, *J. Walter Thompson, U.S.A., Inc.* v. *First BankAmericano*, 518 F.3d 128, 129 (2d Cir. 2008) ("good faith" requirement in the U.C.C. "does not impose a standard of care but, rather, a standard of fair dealing")).  Consistent with that plain meaning and usage, the Second Circuit has itself recently confirmed that the focus of the "good faith" inquiry under the DCL "is on the *subjective intent* of the transferee."  *Walsh*, 618 F.3d at 230 (emphasis added); *see also Sharp*, 403 F.3d at 54 (requiring insider dealing or participation in fraud to show lack of "good faith").  Moreover, the Second Circuit in *HBE Leasing*, in considering "good faith" for purposes of "collapsing" transactions, analyzed whether the defendant's conduct represented a "conscious turning away from the subject" at issue.  48 F.3d at 637.  Under New York law, conscious avoidance "involves a culpable state of mind" akin to actual knowledge of fraud.  *Fraternity Fund Ltd.*, 479 F. Supp. 2d at 368.

In the face of these authorities and the plain meaning of the words "good faith," the Trustee relies on the district court's decision in *Bayou* and the Tenth Circuit's decision in *Jobin* v. *McKay (In re M&L Business Machine Co.)*, 84 F.3d 1330 (10th Cir. 1996).  *See* Tr. Br. 22.  *Bayou*, however, departs from the Second Circuit's precedent in *Sharp*, which holds that a "mere preference between creditors *does not constitute bad faith*," except in narrow circumstances.  *Sharp*, 403 F.3d at 54 (emphasis added).  *Jobin*, moreover, is readily distinguishable from this case.  *Jobin* involved guaranteed returns out of a Ponzi scheme of *120%* per year on certain investments and *468%* per year on others.  84 F.3d at 1338-39.  On those extreme facts, the Tenth Circuit affirmed the lower courts' use of an objective good faith test and found that a "reasonably prudent investor" should have known of the debtor's fraudulent intent — a result that could easily have been reached under *HBE Leasing*'s "conscious turning away" standard.

The *Jobin* decision is especially unpersuasive in addressing *Gilmer* v. *Woodson*, 332 F.2d 541 (4th Cir. 1964), a case under the Bankruptcy Act.  Section 67(d)(2) of the Bankruptcy Act, like the DCL, defined "fair consideration" to include a "good faith" requirement.   The Fourth Circuit in *Gilmer*, as in *Sharp*, held that, "in the case of one who receives security for, or property in satisfaction of, an antecedent debt, as distinguished from one who receives a transfer for a present consideration, good faith cannot be said to be lacking unless the transferee knowingly participated in the debtor-transferor's purpose to defeat other creditors or lacked good faith in valuing the property exchanged."  332 F.2d at 547.  Although *Jobin* states that the *Gilmer* court "did not expressly hold that good faith must always be subjectively measured," that is precisely what *Gilmer* held in the context of the repayment of an antecedent debt.  *See also Davis* v. *Schwartz*, 155 U.S. 631, 640 (1895) (rejecting claim to avoid a preferential transfer on the grounds that "preferred creditors receive no more than they are entitled by law to have, and the fact that they know that other creditors will suffer by their preference *does not show a want of good faith*" (emphasis added)).[6]

In sum, the Trustee's challenge to Patriot's good faith fails on the threshold ground that the Trustee is using the wrong definition of the term.  Since the Amended Complaint does not allege that Patriot either participated in or had actual knowledge of Dreier's fraud, the Trustee has no colorable basis to contest Patriot's good faith.

---

[6]    Since the term "good faith" is not defined in the Bankruptcy Code, the Fourth Circuit's decision in *Gilmer* and the other pre-Bankruptcy Code authorities carry particular weight.  "It is not only appropriate but also realistic to presume that Congress was thoroughly familiar with [judicial] precedents and that it expects its enactments to be interpreted in conformity with them."  *Edelman* v. *Lynchburg Coll.*, 535 U.S. 106, 117 n.13 (2002) (alterations and internal quotation marks omitted)).  The Trustee, notably, has not cited any pre-Code authority adopting the "good faith" test that she recommends.

-16-

2.    **The Trustee's allegations of "inquiry notice" and lack
of due diligence are not plausible.**

Even if the Trustee's definition of "good faith" were accepted, the intentional fraudulent conveyance claim still should be dismissed because the Trustee has failed to allege facts to support a plausible claim that Patriot was on "inquiry notice" of Dreier's fraud and failed to perform due diligence on the red flags it supposedly faced.

The Trustee's theory, in essence, is that Patriot was presented with numerous unresolved red flags suggesting that the Solow note program was a sham, and yet parted with $15 million anyway. The Trustee has already admitted, however, that most of the red flags alleged in the Amended Complaint "are equally applicable to every other hedge fund that invested in the fraud" and, as a result, "*do not present a compelling case* that [such an investor] was on inquiry notice of the fraud." Kleinhaus Decl. Ex. 1 (Gowan Decl.) ¶ 19 (emphasis added). The Trustee cannot reconcile that admission with the arguments in her opposition brief, and she does not even try to do so.

The allegations in the Amended Complaint that are specific to Patriot do not bolster the Trustee's flimsy theory. The Trustee contends, for example, that Jonathan Kane should have noticed that the telephone and fax numbers in the signature blocks at the bottom of two different emails from Steven Cherniak of Solow were different, and deduced from this that one of the emails must have been fake. Tr. Br. 6. The Trustee points as well to an email — sent *immediately after* Patriot funded the loan to Solow — in which Kane, in an obvious joke, stated that he hoped not to see Dreier flying to Colombia anytime soon. Tr. Br. 3, 7. But these allegations hardly raise a plausible inference that Patriot turned a blind eye to fraud. It defies all common sense to infer that Patriot, suspecting fraud, would have parted with $15 million and risked a total loss. Opening Br. 28-29.

-17-

Far from supporting a plausible inference of bad faith, the allegations in the Complaint refute the Trustee's "bad faith" theory.  As the Trustee now acknowledges, Kane insisted on speaking to Cherniak about the loan transaction, and after a telephone call with him, received an email from Cherniak saying "*I've since spoken with Marc Dreier and he said everything is fine.  If you need anything further, please call Marc.*"  Am. Compl. ¶ 38 (emphasis added).  After receiving express assurances from Solow's real CEO that *Dreier* said "everything is fine," and that *Dreier* could answer any further questions about the Solow note program, there is no basis to infer that Kane was on "inquiry notice" that Dreier was running a Ponzi scheme or that Patriot did not conduct due diligence in the face of "red flags."  Patriot indisputably *did* conduct due diligence, and received a response that would have reasonably satisfied anyone that Dreier represented Solow.

Indeed, Patriot's communications with the *real* Cherniak make the Trustee's case against Patriot even *weaker* than her case against GSO, which the Trustee admitted was "slim." Kleinhaus Decl. Ex. 1 ¶ 19.  GSO, like Patriot, "asked questions about the transactions" Dreier solicited for Solow.  *Id.* ¶ 5.  But unlike Patriot, GSO is not alleged to have received any communication from the *real* Cherniak confirming Dreier's role as Solow's agent.  It makes no sense that Patriot, which received assurances from the real CEO of Solow, should face a claim to recover payments made outside the preference period, when the Trustee walked away from her "slim" claim against GSO.

**C.    The Trustee's claim for attorneys' fees should be dismissed.**

Section 276-a of the DCL permits recovery of attorneys' fees only when a transfer is "made by the debtor *and received by the transferee* with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors."  DCL § 276-a (emphasis added).  The Amended Complaint does not allege any facts showing that

Patriot harbored "actual intent" to defraud creditors.  Putting aside conclusory *ipse dixit* to the contrary, Tr. Br. 26, the Trustee offers nothing in response.  The Trustee's claim for attorneys' fees therefore should be dismissed.

**POINT III**

**THE TRUSTEE'S FRAUDULENT CONVEYANCE CLAIMS
SHOULD BE DISMISSED BECAUSE THE TRANSFERS TO
PATRIOT WERE NOT OF THE DEBTOR'S PROPERTY.**

The Trustee's fraudulent conveyance claims fail for the independent reason that they seek to avoid transfers of property that did not belong to DLLP.[7]

As explained by Judge Bernstein, under the "relation back" doctrine, federal forfeiture laws divested DLLP of any interest in property subject to forfeiture as of the time Dreier committed his criminal acts.  *See In re Dreier*, 429 B.R. at 126 ("Under the relation-back doctrine, title to forfeited property automatically vests in the Government at the time of the defendant's criminal act.").  The preliminary order of forfeiture signed by the district court on July 13, 2009 extended to "[a]ny and all funds in [the 5966 Account] held at JP Morgan Chase in the name of Dreier LLP."  *Id*. at 118 (quoting forfeiture order).  Accordingly, when DLLP made payments to Patriot, it made transfers of funds that were not its property — and thus are beyond the reach of the Trustee's avoidance powers.  *See id.* at 125 ("If the transfer did not involve

---

[7]  Xerion Partners II Master Fund, Ltd. and Perella Weinberg, as well as Amaranth LLC, Amaranth Advisors L.L.C. and Amaranth Partners LLC (together, "Amaranth"), have moved to dismiss the Trustee's  avoidance claims against them on the basis that the property transferred was not property of DLLP.  Patriot Group adopts the arguments they have made that the property transferred was not "property of the estate."  Patriot Group also adopts Amaranth's arguments that the Trustee has to plead the defendant's fraudulent intent to state a claim under DCL § 276, as Patriot contended in its opening brief.  *See* Opening Br. 24 n.4.

property of the debtor under non-bankruptcy law, the trustee cannot avoid and recover the

transfer of its value.").

The Trustee asserts that the funds transferred to Patriot were not subject to the

Preliminary Forfeiture Order because they were not in the 5966 Account when the order was

*signed*. But the Preliminary Forfeiture Order provided for forfeiture not only of "any and all

funds in" the 5966 Account, but also of "all property . . . that constitutes or is derived from

proceeds traceable to the commission of the fraud offenses" with which Dreier was charged.

Preliminary Forfeiture Order ¶ 2, sch. A. Accepting as true the Trustee's allegations that Dreier

operated a Ponzi scheme out of the 5966 Account, Am. Compl. ¶¶ 22-23, 55, the Trustee cannot

dispute that the funds in that account were subject to forfeiture before being transferred to

lenders such as Patriot.[8]

The Trustee's contention that Patriot's position is incompatible with the

Coordination Agreement, Tr. Br. 30-31, is similarly meritless. Under that agreement, in

exchange for consideration that it presumably found valuable, the *government* abandoned the

right to seek recovery of the proceeds of avoidance actions against Patriot Group and others. *See*

Coordination Agreement § 4. But the agreement did not resolve the question whether the

*Trustee* may bring avoidance actions to recover funds distributed from the 5966 Account.

---

[8] Contrary to the assertion of the Trustee, Tr. Br. 27-28, neither the Bankruptcy Court nor the
District Court concluded that, despite the Preliminary Forfeiture Order, the funds in the 5966
Account were still property of the estate for purposes of avoidance claims. The courts stated
that, despite the general principle that a thief cannot convey good title to stolen property,
Dreier's fraud would not deprive innocent transferees of the right to keep funds that DLLP
acquired through fraud. *See Gardi* v. *Gowan (In re Dreier LLP)*, 2010 WL 3835179, at *5
(S.D.N.Y. Sept. 10, 2010); *Dreier*, 429 B.R. at 136.

Moreover, despite the Trustee's assertion, Tr. Br. 31, a government statement made in connection with the settlement of claims against GSO does not alter this analysis. The government, as noted by the Trustee, described the Preliminary Forfeiture Order as "forfeiting Dreier's interest in the specific properties listed in the order" and indicated that "[a]t the request of GSO, [it had] agreed to postpone including [certain funds held by GSO] in its application for the Preliminary Order of Forfeiture." King Decl. Ex. 2, at 7. This statement, however, has no bearing on whether the Preliminary Forfeiture Order covered funds held in the 5966 Account before their transfer.

Finally, the Trustee asserts, citing *Counihan* v. *Allstate Insurance Co.*, 25 F.3d 109 (2d Cir. 1994), that private parties may not rely on the relation-back doctrine. Tr. Br. 32-33. But in *Counihan*, the Second Circuit held only that the doctrine does not "serve[] retroactively to divest an insurable interest once it is established." 25 F.3d at 112. The case did not turn on whether the litigant invoking the relation-back doctrine was a private party or the government. Rather, the court simply held that "not every right of the owner is lost by virtue of the relation-back of title" and that "[a]mong the rights that survive are rights under a fire insurance policy." *Id.* at 113 (quoting *Whitestone Sav. & Loan Ass'n* v. *Allstate Ins. Co.*, 28 N.Y.2d 332, 334 (1971)). *Counihan* therefore does not bar Patriot from relying on the relation-back doctrine.

## POINT IV

## THE TRUSTEE'S EQUITABLE SUBORDINATION
## CLAIM SHOULD BE DISMISSED.

The Trustee's claim for equitable subordination should be dismissed as well. Since Patriot has not filed a claim against DLLP, "there is nothing to subordinate nor any case or controversy to resolve." *O'Connell* v. *Arthur Andersen LLP (In re AlphaStar Ins. Grp., Ltd.)*, 383 B.R. 231, 276 (Bankr. S.D.N.Y. 2008). The Trustee cites no authority to the contrary.

-21-

Moreover, the Trustee's assertion that her equitable subordination claim should survive because equitable subordination would be justified if "Patriot accepted payments from DLLP knowing that it was participating in a fraudulent scheme," Tr. Br. 34, puts the cart well before the horse.  The Amended Complaint does not allege any facts to support the claim that Patriot knew about or participated in Dreier's fraudulent scheme.  Without allegations of "egregious and severely unfair" conduct, *In re Sunbeam Corp.*, 284 B.R. 355, 364  (Bank. S.D.N.Y. 2002), the Trustee is not entitled to pursue an equitable subordination claim.

## CONCLUSION

For the reasons stated above and in Patriot's opening brief, the Amended Complaint should be dismissed with prejudice.  The Trustee's position in this case is thoroughly at odds with longstanding precedent regarding the scope and purpose of fraudulent transfer law, including the Second Circuit's decision in *Sharp*, and it is dependent on an amorphous and misguided definition of the term "good faith" that, even if accepted, does not support the Trustee's implausible claim for relief.

Dated:  February 18, 2011

Respectfully submitted,

*Of counsel:*

WACHTELL, LIPTON, ROSEN & KATZ

Emil A. Kleinhaus
Alexander B. Lees

By: /s/ Harold S. Novikoff
     Harold S. Novikoff

51 West 52nd Street
New York, NY  10019
Telephone:  (212) 403-1000
Facsimile:  (212) 403-2000

*Attorneys for Defendants The Patriot Group, LLC,*
*The Washington Special Opportunity Fund, LLC*
*and The Washington Special Opportunity Fund, Inc.*